## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA
## FORT LAUDERDALE DIVISION

| | |
|---|---|
| CHARITY E. KIMES, | CIVIL ACTION |
| Plaintiff, | |
| v. | COMPLAINT 0:23-cv-62408 |
| CROWNLUV INTERATIONAL, INC. d/b/a CROWN CREDIT PRO, | JURY TRIAL DEMANDED |
| Defendant. | |

## COMPLAINT

**NOW COMES** CHARITY E. KIMES ("Plaintiff"), by and through the undersigned counsel, complaining as to the conduct of CROWNLUV INTERATIONAL, INC., doing business as, CROWN CREDIT PRO ("Defendant") as follows:

### NATURE OF THE ACTION

1. Plaintiff brings this action seeking redress for Defendant's violations of the Credit Repair Organizations Act ("CROA") pursuant to 15 U.S.C. § 1679 *et seq.*, and the Pennsylvania Credit Services Act ("PCSA") under 73 P.S. § 2181 *et seq.*

### JURISDICTION AND VENUE

2. Subject matter jurisdiction is conferred upon this Court by the CROA, and 28 U.S.C. §§ 1331 and 1337, as the action arises under the laws of the United States.

3. Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a).

1

4. Venue is proper in this Court pursuant to 28 U.S.C. §1391(b)(1) and b(2) as Defendant's headquarters is in the Southern District of Florida and a substantial portion of the events or omissions giving rise to the claims occurred within the Southern District of Florida.

## PARTIES

5. Plaintiff is a consumer over 18-years-of-age residing in Pittsburgh, Pennsylvania.

6. Defendant is a furniture business and credit repair organization as it provides consumer credit repair services under the guise that its services go towards reestablishing and assisting consumers with their credit troubles.[1] Defendant is a Florida corporation that operates nationwide, including the State of Pennsylvania, with its principal place of business located at 10100 West Sample Road, Floor 3, Coral Springs, Florida 33065.

7. Defendant acted through its agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives and insurers at all times relevant to the instant action.

## FACTS SUPPORTING CAUSES OF ACTION

8. In or around September 2021, Plaintiff began experiencing financial hardship that resulted in her falling behind on a variety of consumer accounts.

9. Shortly thereafter, Plaintiff's creditors began reporting late payments to her credit reports resulting in decreased credit ratings.

10. Unsatisfied with the current standing of her consumer credit reports, Plaintiff began researching companies to help improve her credit ratings.

11. In or around October 2021, Plaintiff happened upon Defendant through its representations that it could help consumers improve their creditworthiness. Defendant promised

---

[1] https://crowncreditpro.com/ (Last visited on December 10, 2023).

Plaintiff that it would be able to remove all negative marks from Plaintiff's consumer credit reports and increase her overall credit scores within 90 days.

12. On October 25, 2021, after discussing specific plans to remove negative accounts and improve Plaintiff's credit scores, Plaintiff entered into a contract with Defendant for the provision of credit repair services.

13. In accordance with the terms of the agreement, Plaintiff paid Defendant a one-time fee of $1,800 in exchange for Defendant's services of reviewing Plaintiff's credit, disputing and removing negative or misleading accounts, including inquiries, and improving her overall credit scores.

14. Throughout their dealings, Defendant deceptively and misleadingly strung Plaintiff along, telling her what she wanted to hear in order to retain her payments, only to turn around and fail to deliver on the promises and representations that induced Plaintiff's continued participation in Defendant's credit repair services.

15. Moreover, Defendant informed Plaintiff that it was sending credit disputes on her behalf as a means to more promptly address the issues on Plaintiff's credit reports, however, Defendant's conduct in this regard misleadingly represented the extent to which the credit reporting agencies are obligated to respond to credit disputes submitted by credit repair organizations.

16. Defendant further promised that negative and misleading accounts would be removed from her credit reports. However, these promises were never fulfilled, and Plaintiff continues to have negative accounts reporting on her credit file.

17. Upon contacting the credit card agencies herself, Plaintiff discovered none of the accounts on her credit report were being disputed.

18. After three months of Defendant's deficient credit repair services Plaintiff attempted to cancel her contract with Defendant, however, she was repeatedly given the run around and Defendant refused to refund her payment.

19. After Plaintiff's multiple attempts to contact Defendant, she was finally promised a refund. Unfortunately, Defendant failed to fulfill that promise and no such refund was issued to Plaintiff.

20. After about two years of attempting to contact Defendant about her refund, Plaintiff has been continuously ignored by Defendant.

21. In total, Plaintiff paid approximately $1,800 to Defendant for credit repair services Defendant never delivered on.

22. Since Plaintiff's enrollment in Defendant's credit repair service, Plaintiff did not see any increase in her creditworthiness despite Defendant's promises that Plaintiff detrimentally relied on.

23. Instead, Plaintiff's Plaintiff continues to have negative marks being reported on her credit scores.

24. Frustrated, distressed, and concerned over Defendant's conduct, Plaintiff spoke with the undersigned regarding her rights.

25. Plaintiff has suffered concrete harm as a result of Defendant's actions, including but not limited to, emotional distress, aggravation, mental anguish, pecuniary loss stemming from the payments made to Defendant for deficient credit repair services, as well as numerous violations of her state and federally protected interests to be free from deceptive and misleading conduct on the part of purported credit repair organizations.

## COUNT I – VIOLATIONS OF THE CREDIT REPAIR ORGANIZATIONS ACT

26. Plaintiff is a "consumer" as defined by 15 U.S.C. § 1679a(1) of the CROA.

27. Defendant is a "credit repair organization" as defined by §1679a(3) of the CROA, as it is a person who uses any instrumentality of interstate commerce or the mails to sell, provide, or perform any service, in return for the payment of money or other valuable consideration, for the express or implied purpose of improving a consumer's credit, credit history, or credit rating, or providing assistance to any consumer with regard to any activity or service for the purpose of improving a consumer's credit.

### a. Violations of CROA § 1679b(a)

28. The CROA, pursuant to 15 U.S.C. § 1679b(a)(3) prohibits any person from "mak[ing] or us[ing] any untrue or misleading representation of the services of the credit repair organization." Additionally, pursuant to 15 U.S.C. § 1679b(a)(4), any person is prohibited from "engag[ing], directly or indirectly, in any act, practice, or course of business that constitutes or results in the commission of, or an attempt to commit, a fraud or deception on any person in connection with the offer or sale of the services of the credit repair organization."

29. Defendant violated the above referenced provisions of the CROA through its misrepresentations and deception as to the nature of the credit repair services it could provide Plaintiff. Defendant advised that it would actively remove the inaccurate accounts and inquiries from Plaintiff's credit report and increase Plaintiff's overall scores but failed to fulfill that promise.

30. Defendant further acted deceptively when it suggested to Plaintiff that her payment was being used to remove identified accounts within Plaintiff's credit reports.

**b. Violations of CROA § 1679b(b)**

31. The CROA, pursuant to 15 U.S.C. § 1679b(b), provides that "[n]o credit repair organization may charge or receive any money or other valuable consideration for the performance of any service which the credit repair organization has agreed to perform for any consumer before such service is fully performed."

32. Defendant violated § 1679b(b) through its charging and receiving of money for services agreed to perform before such services are fully performed. Defendant's practice of charging for services upfront, before such services is performed, is inherently in violation of the CROA. Defendant similarly withheld sums for credit repair services it never actually performed.

33. As alleged above, Plaintiff was harmed by Defendant's conduct.

**WHEREFORE**, Plaintiff, CHARITY E. KIMES, respectfully requests that this Honorable Court enter judgment in her favor as follows:

a. Declaring that the practices complained of herein are unlawful and violate the aforementioned bodies of law;

b. Awarding Plaintiff actual damages to be determined at hearing, as provided under 15 U.S.C. § 1679g(a)(1);

c. Awarding Plaintiff punitive damages, in an amount to be determined at trial, as provided under 15 U.S.C. § 1679g(a)(2)(A);

d. Awarding Plaintiff's costs and reasonable attorney fees as provided under 15 U.S.C. § 1679g(a)(3); and

e. Awarding any other relief as the Honorable Court deems just and appropriate

### COUNT II – VIOLATIONS OF THE PENNSYLVANIA CREDIT SERVICES ACT

34. Plaintiff is a "buyer" as defined by 73 P.S. § 2182.

35. Defendant is a "credit service organization" as defined by 73 P.S. § 2182.

   a. **Violation of PCSA - 73 P.S. § 2183**

36. PCSA, pursuant to 73 P.S. § 2183, outlines a list of conduct which credit services organizations are prohibited from engaging in.

37. The PCSA, pursuant to 73 P.S. § 2183(1), provides that credit services organizations may not "Charge or receive any money or other valuable consideration prior to full and complete performance of the services the credit services organization has agreed to perform for or on behalf of the buyer…".

38. Defendant violated the above referenced provision of the PCSA through its charging Plaintiff prior to full and complete performance of its services without reimbursing Plaintiff for its incomplete services.

39. The PCSA, pursuant to 73 P.S. § 2183(4), provides that credit services organizations cannot "make or use any untrue or misleading representations in the offer or sale of the services of a credit services organization or engage directly or indirectly in any act, practice or course of business which operates or would operate as a fraud or deception upon any person in connection with the offer or sale of the service of a credit services organization.".

40. Defendant violated the above referenced provision of the PCSA by making a false and misleading representation when it promised Plaintiff to remove all negative marks on her credit report and increase her overall credit scores but failed to deliver that promise despite Plaintiff's payment to Defendant in detrimental reliance on its promise.

41. As alleged above, Plaintiff was harmed by Defendant's unlawful practices.

**WHEREFORE**, Plaintiff, CHARITY E. KIMES, respectfully requests that this Honorable Court enter judgment in her favor as follows:

a. Declaring that the practices complained of herein are unlawful and violate the aforementioned statutes and regulations;

b. Awarding Plaintiff actual damages pursuant to 73 P.S. § 2191;

c. Awarding Plaintiff punitive damages pursuant to 73 P.S. § 2191;

d. Awarding Plaintiff costs and reasonable attorney fees, pursuant to 73 P.S. § 2191;

e. Enjoining Plaintiff from further violations of law; and,

f. Awarding any other relief the Court deems just and appropriate.

**Plaintiff demands a Trial by Jury**

Dated: December 26, 2023

Respectfully submitted,

/s/ Alexander J. Taylor
Alexander J. Taylor, Esq.
*Counsel for Plaintiff*
Sulaiman Law Group, Ltd.
2500 South Highland Avenue,
Suite 200
Lombard, IL 60148
Telephone: (630) 575-8181
ataylor@sulaimanlaw.com